UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
GREENEVILLE

| | | |
|---|---|---|
| DEBORAH ANNA | ) | |
| | ) | |
| V. | ) | NO. 2:12-CV-431 |
| | ) | |
| CAROLYN W. COLVIN, | ) | |
| Acting Commissioner of Social Security | ) | |

### REPORT AND RECOMMENDATION

This matter is before the United States Magistrate Judge, under the standing orders of the Court and 28 U.S.C. § 636 for a report and recommendation. Plaintiff's application for Supplemental Security Income under the Social Security Act was denied following three hearings before an Administrative Law Judge ["ALJ"]. Both the plaintiff and the defendant Commissioner have filed dispositive Motions [Docs. 14 and 16].

The sole function of this Court in making this review is to determine whether the findings of the Commissioner are supported by substantial evidence in the record. *McCormick v. Secretary of Health and Human Services,* 861 F.2d 998, 1001 (6th Cir. 1988). "Substantial evidence" is defined as evidence that a reasonable mind might accept as adequate to support the challenged conclusion. *Richardson v. Perales*, 402 U.S. 389 (1971). It must be enough to justify, if the trial were to a jury, a refusal to direct a verdict when the conclusion sought to be drawn is one of fact for the jury. *Consolo v. Federal Maritime Commission*, 383 U.S. 607 (1966). The Court may not try the case *de novo* nor resolve conflicts in the evidence, nor decide questions of credibility. *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). Even if the reviewing court were to resolve the factual issues differently, the Commissioner's decision must stand if supported by substantial evidence.

*Liestenbee v. Secretary of Health and Human Services,* 846 F.2d 345, 349 (6th Cir. 1988). Yet, even if supported by substantial evidence, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Bowen v. Comm'r of Soc. Sec.,* 478 F.3d 742, 746 (6th Cir. 2007).

Plaintiff was 40 years old when her application was filed in 2007. She has no past relevant work experience. She has a high school education. The ALJ found that she has severe impairments of degenerative disc disease and obesity. The plaintiff alleged other severe impairments, including a mental impairment. Despite having, in the opinion of this Court, no medical opinion evidence to support his finding, the ALJ who issued the first hearing decision found that the plaintiff did not have a severe mental impairment. *See,* No. 2:10-CV-190, Doc. 21. It is the adverse decision by the present ALJ after remand which is the subject of this administrative appeal.

The plaintiff's mental medical history is summarized in the Commissioner's brief as follows:

> Plaintiff received treatment for major depression at the Charlotte Taylor Center starting at the end of 1997 (Tr. 689). Between September 9, 2006, Plaintiff's alleged onset date, and May 2011, Plaintiff regularly attended therapy sessions with nurse Lyn Ann Govette (Tr. 328-382, 617-688, 862-884, 990-997, 1341-1402, 1538-1548, 1605-1606). In early 2006, Plaintiff had good hygiene, her mood was stable, and she denied depression, sadness, or crying spells (Tr. 1364). Her conditioned worsened over the summer of 2006, but she admitted that this was because she had not been taking her medications regularly (Tr. 1363). By late 2006, when she was again taking her medications, her mood was calm and her affect broad, she reported less anxiety and better sleep, and she was once again appropriately dressed (Tr. 1360). Her condition in 2007 remained stable, with appropriate behavior and grooming, and no reports that she was dissatisfied with her treatment (Tr. 1356-58). Plaintiff continued in treatment without any reported problems for the majority of 2008 (Tr. 1350-55). In March 2008, Plaintiff told Ms. Govette that her doctor had

recommended gastric bypass surgery, and Ms. Govette found that there were no contraindications (Tr. 1354). In December 2008 Plaintiff was "distressed" because she disliked her son's new girlfriend, and Plaintiff was advised to use her coping skills and was admonished to "stop skipping appointments" as this would help her condition (Tr. 1350). However, Ms. Govette also noted that Plaintiff had 70-80% symptom improvement on Benzodiazepine (Tr. 1351), and in February 2009, Ms. Govette stated Plaintiff had 80-90% improvement on her medication (Tr. 1349).

In August 2008, Ms. Govette wrote an evaluation related to a state disability claim that stated Plaintiff had bipolar I disorder, mixed episode, with related insomnia, and borderline personality disorder (Tr. 865). She concluded Plaintiff's memory was adequate, she had some impairment in concentration, her thinking was distorted, her affect was normal, her mood was anxious, she had no psychomotor disturbances, and her ability to interact with others was poor (Tr. 865). Ms. Govette noted that Plaintiff did not abuse drugs or alcohol (Tr. 865).

Ms. Govette and Linda Gentles, a licensed professional counselor ("LPC") who also treated Plaintiff at Charlotte Taylor, completed another assessment in June 2009 at the request of Plaintiff's attorneys (Tr. 925-26). They opined that Plaintiff had no useful ability to deal with the public, use judgment with the public, deal with work stresses, or maintain her personal appearance, but she had a fair ability to follow work rules, relate to co-workers, function independently, maintain attention and concentration, behave in an emotionally stable manner,
relate predictably in social situations, and demonstrate reliability (Tr. 925-26).

Plaintiff continued to receive treatment from the Charlotte Taylor Center in 2009 and 2010, including regular therapy sessions with Ms. Gentles, although Plaintiff frequently missed the appointments (Tr. 996-97, 1373-79, 1544-49). Angela Marie Williams became Plaintiff's case manager in early 2009 and began visiting her twice monthly in 2009 and 2010 (Tr. 55, 1383-90). Throughout 2009 and 2010, Ms. Govette and Ms. Gentles regularly found Plaintiff's "focus and concentration intact" (Tr. 1373, 1374, 1375, 1377, 1546, 1547, 1548). They often reported that Plaintiff was "disheveled" in 2009 (Tr. 1346, 1376, 1377, 1378, 1392, 1402); however, in 2010 she generally maintained fair to good hygiene (Tr. 1373, 1374, 1375, 1383, 1546, 1547, 1548), appearing disheveled on only a couple of occasions (Tr. 1548, 1549). Moreover, although Plaintiff continued occasionally to be "agitated," "slightly agitated," or "angry" in 2010 (Tr. 1373, 1384, 1385, 1388), Ms. Govette and Ms. Gentles more often found Plaintiff's mood normal, pleasant, or euthymic (Tr. 1345, 1375, 1383, 1385, 1386, 1388, 1389). Notably, in June 2010 Plaintiff handled a conflict with her landlord in "a very calm and organized manner" and obtained a lawyer to address the issue (Tr. 1544). In July 2010, Plaintiff received an eviction notice and yet was only "slightly agitated" and was "managing [the] changes with adequate coping skills" (Tr. 1548). In September 2010, Plaintiff was still "doing well" and had a "normal mood" in spite of the fact that the case against her landlord was about to go to court (Tr. 1548).

On December 16, 2010, Plaintiff reported to Ms. Gentles that she was happy because she was back in touch with her son after a period of estrangement and was

3

excited to visit her best friend at Christmas (Tr. 1546). Ms. Gentles noted that Plaintiff was "doing well," her mood was normal, and her focus and concentration were intact (Tr. 1546). She also was dressed and groomed appropriately (Tr. 1546). Plaintiff missed her next appointment in January, returned in February to discuss the death of a friend, did not appear for scheduled appointments in March or April, and then returned for an appointment on May 10, 2011, where she presented as "awake, alert and oriented" (Tr. 1539). She was "dressed casually with clean neat appearance" and was "interactive and cooperative" (Tr. 1539). She was able to "maintain logical, relevant conversation and provide[d] answer to questions with adequate information" (Tr. 1539).

      In May 2011, Ms. Gentles and Ms. Govette jointly signed a second assessment and opined that Plaintiff had no useful ability to deal with work stresses; a seriously limited to no useful ability to deal with the public, use judgment with the public, and interact with supervisors; and a seriously limited but not precluded ability to relate to co-workers, follow work rules, function independently, and maintain attention and concentration (Tr. 1606). They noted that Plaintiff became angry easily and would not be able to work with others due to her being easily agitated (Tr. 1606). They also stated that Plaintiff had no useful ability to follow complex job instructions, a seriously limited ability to follow detailed but not complex job instructions, and a seriously limited ability to maintain personal appearance or behave in an emotionally stable manner (Tr. 1606). Ms. Gentles noted that Plaintiff was disheveled when she came to treatment and did not respond well around groups of people (Tr. 1607). She was easily agitated and was not able to manage several tasks at one time (Tr. 1607). There is no evidence in the record that Plaintiff sought treatment from the Charlotte Taylor Center again or that she received mental health treatment from another provider after May 2011.

      On August 10, 2008, Dr. Horace F. Edwards, a state agency reviewing psychologist, completed a Psychiatric Review Technique (PRT) form in which he stated that Plaintiff had moderate limitations in social functioning and maintaining concentration, persistence, and pace, mild limitations in activities of daily living, and no episodes of decompensation of extended duration (Tr. 499). He also completed a mental RFC assessment in which he found that Plaintiff was not significantly limited in nine out of twenty areas of functioning, including her ability to understand, remember, and carry out simple instructions, the ability to make simple work-related decisions, and the ability to sustain an ordinary routine without special supervision (Tr. 511-12). He found that she had moderate limitations in seven other areas of functioning but was markedly limited only in her ability to interact appropriately with the public (Tr. 511-12). He then opined that she was "able to understand and remember simple and low-level detailed tasks" (Tr. 513). He also opined that she was able with some difficulty to maintain attention, concentration, persistence, and pace and to adapt to change (Tr. 513). Finally, he opined that she was unable to interact appropriately with the general public but able with some difficulty to get along with others and supervisors without behavioral extremes (Tr. 513).

      On March 31, 2008, another state agency reviewing psychologist, Frank D.

4

Kupstas, Ph.D., completed a PRT form in which he stated that Plaintiff had moderate limitations in social functioning and maintaining concentration, persistence, and pace, mild limitations in activities of daily living, and no episodes of decompensation of extended duration (Tr. 700). He also completed a mental RFC assessment in which he found that Plaintiff was not significantly limited in sixteen out of twenty areas of functioning, including her ability to understand, remember, and carry out both simple and detailed instructions and the ability to make simple work-related decisions (Tr. 704-05). He found that she had moderate limitations in the other four areas of functioning: the ability to maintain attention and concentration for extended periods; perform activities within a schedule; complete a normal workday and workweek without interruptions from psychologically based symptoms; and interact appropriately with the public (Tr. 704-05). He then opined that she was able to sustain concentration, persistence, and pace "over extended periods for simple tasks," could do so for detailed tasks with some difficulty at times and could interact with the general public with some difficulties at times (Tr. 706). On October 26, 2010, Dr. Kupstas again reviewed Plaintiff's records and concluded that she had no severe impairments (Tr. 1445, 1455).

On August 12, 2009, Kathy Birchfield, a psychological examiner, examined Plaintiff (Tr. 981). She found Plaintiff had a Verbal IQ of 92, a Verbal Comprehensive Index of 96, and a Perceptual Organization Index of 91 (Tr. 983). Her Performance IQ was 85, and her Full Scale IQ was 89, which was in the low average range of intellectual abilities (Tr. 983). Ms. Birchfield found that Plaintiff's responses to many of the questions were indicative of malingering, stating that "[Plaintiff] is endorsing a high proportion of everyday problems and symptoms that are not always associated with mental illness. She is endorsing a high proportion of symptoms of extreme or unbearable severity. There is likelihood that she is exaggerating the severity of her impairment." (Tr. 985). Nevertheless, Ms. Birchfield diagnosed bipolar disorder NOS and borderline personality disorder (Tr. 985). She concluded that Plaintiff retained the ability to understand and remember complex or detailed instructions and to maintain focus and that she had fair grooming and hygiene (Tr. 985). In an attached checklist, Ms. Birchfield observed that Plaintiff "has no intellectual or achievement limitations" but that her mental health and mood issues would likely have a negative impact on her ability to "relate to others and think clearly" and would lower her threshold for frustration (Tr. 987-88).

[Doc. 17, pgs. 3-9].

The Commissioner has also summarized the testimony at plaintiff's various hearings as follows:

At the hearing for Plaintiff's first application for SSI in July 2009, Plaintiff

5

testified that she was unable to work because she "can't deal with stress" and had trouble "concentrating, keeping up, dealing with keeping things organized" (Tr. 47). She maintained that she could not go outside without having panic attacks and that she could not sleep at night because of her fear of Charles Manson (Tr. 48, 51).

At the same hearing Angela Marie Williams testified that she had been Plaintiff's case manager for the past three months and had seen Plaintiff twice a month (Tr. 55). She said that Plaintiff had "racing thoughts," difficulty concentrating, and depression and anxiety (Tr. 55).

At the supplementary hearing in December 2009, a psychological expert, Dr. Thomas Schacht, testified based on his review of Plaintiff's medical records (Tr. 32-36). He stated that Plaintiff had a long history of noncompliance with medication and mental health treatment, of seeking controlled substances, and of hiding third-party prescriptions from her mental health providers for the purpose of obtaining further medication (Tr. 32-35). He noted that in March 2008, Ms. Govette stated that there were no contraindications for gastric bypass surgery, which is a surgery that typically requires psychiatric clearance because of the behavior changes necessary to render it successful (Tr. 34). He concluded that Dr. Birchfield's examination "didn't get accurate information" from Plaintiff because of malingering (Tr. 35-36).

At the July 18, 2011 hearing regarding Plaintiff's second SSI claim, Plaintiff testified that she was "too tired to do anything," even shower (Tr. 1090). She said that she would not be able to work because she "cannot take authoritative men" (Tr. 1097). She also said that her concentration "jumped from one subject to the other with a matter of seconds" (Tr. 1098).

On July 17, 2012, Plaintiff's case was once more brought before an ALJ on remand (Tr. 1064). Plaintiff reiterated her testimony that she could not work because of her concentration issues and fear of "authoritative men" (Tr. 1068, 1075).

The VE on remand, Dr. Robert Spangler, testified that Plaintiff had no past relevant work (Tr. 1080). He was asked to assume an individual who was 44 years of age with a high school education and no relevant work who could do light work but who could only perform simple, routine jobs that would not require frequent interaction with the general public (Tr. 1080-1081). He testified that such a person could perform the jobs of food prep, dishwasher, janitor, maid, lawn, farm, or animal care, and grounds maintenance (Tr. 1081). He also testified that, if an individual had the additional limitations of no useful ability to deal with work stresses or engage in social interactions, there would be no jobs across all exertional levels (Tr. 1081-1082).

[Doc. 17, pgs. 9-10].

In his hearing decision, the ALJ found that the plaintiff had severe impairments of degenerative disc disease, insulin-dependent diabetes, obesity, mixed bipolar disorder and general anxiety disorder. [Tr. 1043]. After finding she did not meet the requirements of any

6

"listing," the ALJ found that she had the residual functional capacity to perform light work, but was limited to "performing only simple routine jobs that would not require frequent interaction with the general public." [Tr. 1045]. He then thoroughly discussed the vast amount of medical evidence, including her psychological counselors Ms. Govette and Ms. Gentles. He then noted that plaintiff had not sought and more mental health treatment since may 2011.[1] He also discussed the evidence from Dr. Schacht's testimony in a previous hearing and other evidence in the record regarding the lengths the plaintiff had gone to in order to obtain Lortab, Valium and other controlled substances. [Tr. 1051]. He noted that Dr. Dey, another physician she visited March 13, 2010 seeking Lortab, had discovered that plaintiff had received 260 Lortab tablets between January 15, 2010 and February 15 2010 from different providers. [Tr. 1052-52].

    The ALJ gave great weight to the opinion of the "State agency mental medical consultant dated August 10, 2006..." because he found it supported by the medical record and the plaintiff's daily activities. He gave "some weight" to another State agency mental consultant whose report was dated March 31, 2008 who limited plaintiff to simple tasks and found she had limited ability to interact with the general public, finding that opinion consistent with his finding that the plaintiff could do only simple, routine jobs without interaction with the general public. He rejected the opinion of Ms. Birchfield dated August 20, 2009, because he gave plaintiff "the benefit of doubt in finding she would be limited to simple routine jobs because of her depression and irritability. [Tr. 1054].

    The ALJ gave no weight to the opinion of Ms. Govett and Ms. Gentles. He noted that

---

[1] The hearing decision was issued August 20, 2012.

their treatment records indicated plaintiff "routinely presented with a euthymic mood and congruent affect." Also, "their records document that she was not honest in reorted her medications she had stopped taking." [Tr. 1055].

Based upon the testimony of the vocational expert, he found that there were a significant number of jobs the plaintiff could perform with her RFC as found by the ALJ. Accordingly, he found that she was not disabled. [Tr. 1056-57].

Plaintiff asserts that the ALJ's hypothetical question to the VE was "clearly defective" in that the limitation to simple, routine work with no more than infrequent interaction with the general public did not adequately describe the effects of her "moderate" mental limitations on her ability to work. She also asserts that the ALJ did not give appropriate weight to the opinions of Govette and Gentles, her treating psychological counselors, and did not mention the opinion of plaintiff's case manager, Angela Marie Williams, who testified at plaintiff's first hearing that plaintiff had difficulty concentrating and being compliant with her treatment. Also, she argues that the opinion of the VE at the first hearing that if the plaintiff had moderate mental limitations she could not work forecloses any different conclusion here.

With respect to the third assignment of error, the Court simply does not believe that a person with some moderate mental limitations is precluded from all substantial gainful activity. It is true that Ms. Donna Bardsley, the VE at the first hearing, opined that an individual with a combination of certain moderate mental impairments would have no available jobs. [Tr. 40]. However, this does not make sense when the term "moderate" means a person has some limitation but can still perform job functions in a satisfactory

8

manner. The ALJ at that hearing, and none since, has been in a position to have accepted that opinion of Ms. Bardsley as true, so it has no "law of the case" significance attached to it.

Regarding Ms. Govette, Ms. Gentles, and Ms. Williams, these were not acceptable medical sources entitled to any special weight or consideration under the regulations, as treating sources or otherwise. The ALJ did give his reasons for rejecting the opinions of Govette and Gentles, as stated above. Their treatment notes and the observations recounted therein do not match their horrific assessments, and do not agree with the opinions of Ms. Birchfield and the State agency consultants. Furthermore, the record suggests that plaintiff misinformed them about her medications, and was not compliant with suggested treatment. The ALJ was the trier of fact and fulfilled his responsibilities in that regard.

Ms. Williams, not having been mentioned by this ALJ at all, is in a different posture. However, all of the problems the ALJ had with respect to the opinions of Govette and Gentles apply equally to Ms. Williams. As a "case manager" [Tr. 54-55], Ms. Williams does not by any means appear to be a licenced psychological counselor of any sort, but a layperson responsible for checking up on certain clients of her employer. Her observations in this regard do not carry any special significance at all, and it was not error for the ALJ in the present adjudication to discuss this as a mental health opinion.

The final assignment of error is that the question to the VE was insufficient, and thus fatally tainted. Plaintiff suggests that as a result of *Ealy v. Commissioner of Soc. Sec.*, 594 F.3rd 504 (6th Cir. 2010), and other cases, merely limiting a plaintiff to jobs which are simple and routine and with infrequent contact with the general public does not accurately describe the plaintiff's functional restrictions. Thus, states plaintiff, the ALJ cannot rely upon the

9

hypothetical in his finding that jobs existed and that the plaintiff was not disabled.

In *Ealy*, the hypothetical asked by the ALJ to the VE was to "assume this person [is] limited to simple, repetitive tasks and instructions in non-public work settings." *Id*. at 516. In that case, the ALJ was, as here, relying upon the opinion of a state agency psychologist. The Sixth Circuit noted that the ALJ stated that his assessment was "consistent" with that of the psychologist. The problem was that it was not. One of the state agency psychologist's specific findings was that the ability of Mr. Ealy to sustain attention to complete simple repetitive tasks was limited to [two-hour] segments over an eight hour day where speed was not critical." *Id*. The Court stated that for the ALJ's hypothetical to accurately describe Mr. Ealy's situation, it would have to state that "the speed of his performance could not be critical to his job." In the present case, such an express further limitation is not present. While it is true that *Ealy* cites, somewhat in dicta, a district court case which held that where a claimant has moderate limitations in concentration, persistence or pace, the hypothetical will never be adequate when it merely limits the claimant to simple, routine, unskilled work,[2] this Court is unwilling to make such a jump. Other district courts in the Sixth Circuit have declined to expand *Ealy* to this degree. *See, Jackson v. Commissioner of Soc. Sec.*, 2011 WL 4943966 (N.D. Ohio. 2011), and *Horsely v. Astrue*, 2013 WL 55637 (S.D. Ohio. 2013), and this Court finds their reasoning persuasive in this regard. In this opinion of this Court, the hypothetical question in the present case was adequate to express the limitations found by the ALJ, and there was substantial evidence for those limitations.

The Court finds that there was substantial evidence to support the ALJ's determination

---

[2] *Edwards v. Barnhart*, 383 F.Supp.2d 920, 930-31 (E.D. Mich. 2005).

of the plaintiff's RFC, and that he committed no errors of law in evaluating and weighing the evidence. Accordingly, it is respectfully recommended that the plaintiff's Motion for Judgment on the Pleadings [Doc. 14] be DENIED, and the defendant Commissioner's Motion for Summary Judgment [Doc. 16] be GRANTED.[3]

Respectfully submitted,

s/ Dennis H. Inman
United States Magistrate Judge

---

[3] Any objections to this report and recommendation must be filed within fourteen (l4) days of its service or further appeal will be waived. 28 U.S.C. 636(b)(1).